RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 7 / 13 / 05
BY DM

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**SHREVEPORT DIVISION**

MARY BRADLEY

versus

SUMMIT INSTITUTE FOR PULMONARY
MEDICINE AND REHABILITATION, ET AL.

CIVIL ACTION NO. 03-1577
JUDGE TOM STAGG

## MEMORANDUM RULING[1]

Before the court are five motions for summary judgment filed by the defendants and plaintiff, one filed by the plaintiff Mary Bradley ("Bradley"), two filed by Summit Holdings Ltd. ("Summit"), and two filed by UNUM Life Insurance Company of America ("UNUM"). See Record Documents 31, 33, 35, 37, and 39. For the reasons set forth below, all claims made by Bradley against the defendants are dismissed.

## I. BACKGROUND

Bradley was employed by Summit as the Director of Radiology at all times relevant to this suit. During the time of her employment, Bradley was a beneficiary under a group long term disability plan issued by UNUM.

---

[1] This opinion is not intended for commercial print or electronic publication.

On September 27, 1999, Bradley began leave under the Family Medical Leave Act ("FMLA") as a result of complaints of chest pain and arm weakness. At that time she was employed as the Director of Radiology at a wage of $20.62 per hour. By December 20, 1999, Bradley had exhausted the allotted twelve weeks of FMLA leave and was terminated following her refusal to return to work. On April 5, 2002, Bradley filed a claim for disability benefits, alleging that she was disabled as of September 28, 1999, because of unspecified chest pain. She stated that her injury was the result of a motor vehicle accident in 1989, and that it had worsened over the subsequent ten year period.

Dr. Laurens Pickard ("Dr. Pickard"), one of Bradley's two attending physicians, submitted an Attending Physician's Statement dated May 20, 2000, in which he diagnosed Bradley with chest pain as well as pain in her left shoulder and arm and tingling and numbness of the hand. Dr. Pickard issued restrictions that limited Bradley from performing repetitive motions with her left shoulder and arm and from lifting any heavy weight with her left arm. His report also showed that Bradley had been admitted to the hospital from December 22, 1999, until December 25, 1999.

UNUM received medical records from Bradley's other attending physician, Dr. Donna Holder ("Dr. Holder"), on June 12, 2000, and was provided with

2

Bradley's job description by Summit on June 19, 2000. UNUM then conducted a vocational rehabilitation review, during the course of which Bradley was classified as a "Radiology Administrator" using the Dictionary of Occupational Titles ("DOT").[2] The position of Radiology Administrator was listed as a sedentary position in the national economy. <u>See</u> Record Document 39, at UACL 00047.

On August 21, 2000, after it had received Bradley's medical records from Dr. Pickard and Methodist Hospital, UNUM conducted an in-house medical review. In doing so, Dr. Horne, one of UNUM's in-house physicians, reviewed all of Bradley's records and concluded that Bradley's surgery in December of 1999, for the resection of the third, fourth, and fifth costal cartilage, should have resulted in a recovery period of three to six weeks. He further noted that Bradley's most recent visit to Dr. Pickard occurred on February 7, 2000, and at the time of that visit her incision had healed and she had discontinued her medication with no complaints. Dr. Horne therefore concluded that Bradley's records did not demonstrate the need for any restrictions or limitations after February 7, 2000. UNUM subsequently notified Bradley that long term disability ("LTD") benefits

---

[2] Because the DOT did not contain an entry for the position Director of Radiology, UNUM contends that it compared Bradley's job description with those contained in the DOT and concluded that she would most accurately be classified as a Radiology Administrator.

had been approved for the period from December 27, 1999, through February 7, 2000, but no longer.

Upon receiving notice of UNUM's intent to terminate payment of LTD payments as of February 7, 2000, Bradley's counsel at the time made a formal request for reconsideration. In support of that request he attached a medical report from an orthopedic specialist, a "Reduced Physical Tolerance" evaluation, a Functional Capacities Assessment, and a Rehabilitation Employment Assessment Program. On September 25, 2000, Dr. Horne once again reviewed Bradley's claim and noted that she was able to lift twenty pounds and was able to perform fine motor tasks, but that her ability was reduced by the onset of pain. He therefore concluded that it would be advisable to limit Bradley's fine motor tasks by allowing for breaks and that the use of devices such as voice-activated computers or dictaphones would be beneficial. See Record Document 39 at UACL 00086.

UNUM conducted another vocational rehabilitation review on September 25, 2000. The vocational consultant recommended that Bradley not perform repetitive movements with her arms and that she be provided with a "special chair [with] arm supports." Record Document 39 at UACL 00088. The consultant further suggested that Bradley be provided with communication aids like voice-activated computers. The consultant also contacted the Director of Radiology at another local hospital who

4

informed him that he did use the computer for writing letters, e-mailing, and the like, but that this as well as the physical demands of the job would vary from hospital to hospital. He estimated that he spent a total of approximately two hours per work day on the computer. The conclusion of the vocational review was that modifications could be made to accommodate Bradley, such as a voice-activated computer or a dictaphone, but that the use of the computer keyboard itself was not required for prolonged periods of time. Accordingly, UNUM notified Bradley that its original determination had not been affected by the additional information. Bradley's attorney then requested an administrative appeal of UNUM's determination.

In response to Bradley's request for an administrative appeal, UNUM attempted to contact Bradley to discuss her duties as Director of Radiology but found that her phone had been disconnected. UNUM's other in-house physician, Dr. McSharry, then reviewed the file and conducted a medical review. He noted that the previous reports and evaluations gave a good indication of Bradley's condition. However, he did notice some additional difficulties with overhead work with the left arm as well as some limitations on push/pull activities using her left arm. Dr. McSharry concluded that Bradley was capable of returning to her position as Director of Radiology because those activities were only required occasionally.

UNUM then advised Bradley, by correspondence dated February 19, 2001, that the denial of benefits was fully supported. In its letter UNUM noted that despite the limitations on her fine motor skills, Bradley had received treatment sporadically starting in 1995 and had been able to continue in her position during that time. In addition, UNUM pointed out that Bradley underwent surgery in December of 1999 and had reported an improvement since that time. Finally, UNUM reiterated the definition of "disabled" used in the policy, which requires Bradley to demonstrate that she "cannot perform each of the material duties of her regular occupation." Record Document 39 at UACL 00175. UNUM concluded that there was not adequate information in her file to support Bradley's contention that she was unable to perform her job as it is performed in the national economy and upheld the previous determination to deny the payment of benefits after February 7, 2000.

Ultimately Bradley obtained new counsel, Mr. James Madison Woods ("Woods"), who challenged UNUM's denial of benefits. In response UNUM provided Woods with a copy of the administrative record and informed him that Bradley had exhausted her administrative remedies. Subsequently Bradley filed the instant suit alleging violations of the Employee Retirement Income Security Act (ERISA), the Comprehensive Omnibus Budget Reconciliation Act (COBRA), and the Health Insurance Portability and Accountability Act (HIPAA). At the

plaintiff's request, the court dismissed Bradley's COBRA and HIPAA claims with prejudice. See Record Document 86. The only remaining claims are those under ERISA.

Bradley seeks a declaration that her LTD benefits were wrongfully terminated, as well as the reinstatement of those benefit payments and an award of all LTD benefits retroactive to the date her benefits were terminated. Both UNUM and Summit answered Bradley's claim, and Summit filed a cross-claim against UNUM seeking indemnification.

## II. ANALYSIS

### A.    Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial." Willis v. Roche Biomedical Laboratories, Inc.,

7

61 F.3d 313, 315 (5th Cir. 1995). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Id. Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993).

**B.     Bradley's Claims Against UNUM.**

### 1.     Standard Of Review.

ERISA authorizes a civil action by a participant "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Generally, a denial of benefits under an ERISA plan is reviewed under a de novo standard. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956 (1989). The court applies an abuse of discretion standard, however, when "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at 114, 109 S. Ct. at 956-57. Regardless of the administrator's ultimate authority to determine benefit eligibility, factual determinations made by the administrator during the course of a benefits review should also be reviewed for an abuse of discretion. See Bellaire Gen. Hosp. v. Blue Cross Blue Shield, 97 F.3d 822 (5th Cir. 1996); McCall

8

v. Burlington Northern/Santa Fe Co., 237 F.3d 506, 512 (5th Cir. 2000). "Federal

courts owe due deference to an administrator's factual conclusions that reflect a

reasonable and impartial judgment." Pierre v. Conn. Gen. Life Ins. Co., 932 F.2d

1552, 1562 (5th Cir. 1991).

Bradley argues that UNUM's decision should be reviewed de novo because

the plan did not expressly vest in UNUM the discretionary authority to make such

decisions. While UNUM admits that the policy did not expressly grant it authority

to interpret policy provisions, it maintains that abuse of discretion is still the proper

standard in this case. In Vercher, the case cited by Bradley to support her

argument, the court stated that:

> judicial review of the administrator's determination of plan terms and
> eligibility for benefits provisions was to be de novo unless the plan
> expressly conferred upon the plan administrator discretionary authority
> in making such a determination. If discretion were granted, the "abuse
> of discretion" standard would apply instead. **However . . . even
> where the plan does not expressly give the administrator
> discretionary authority, "for factual determinations under ERISA
> plans, the abuse of discretion standard of review is the appropriate
> standard" [. . .] a plan administrator's factual determinations are
> always reviewed for abuse of discretion [. . .]**

Vercher v. Alexander & Alexander, Inc., 379 F.3d 222, 226-27 (5th Cir. 2004)

[emphasis added].

While Bradley attempts to argue that pursuant to Bruch, 489 U.S. 101, that

there must be express language granting discretionary authority in order to warrant review for abuse of discretion, her contention is incorrect. The Fifth Circuit Court of Appeals has held, as demonstrated by <u>Vercher</u>, that in addition to the circumstances set forth in <u>Bruch</u> this more deferential standard also applies in cases where the administrator's decision was a mere factual determination. See <u>Vercher</u>, 379 F.3d at 226-27; <u>Pierre</u>, 932 F.2d 1552.[3] It is clear that UNUM need not have been expressly granted discretionary authority by the plan in order to qualify for review of its decisions under the abuse of discretion standard. In her response to UNUM's opposition to her motion for partial summary judgment, Bradley raises her second argument as to why abuse of discretion is not the proper standard of review in this case. She argues that UNUM is not a plan fiduciary and is therefore not entitled to abuse of discretion review. Rather, she states, "UNUM is a sub-contractor of an unnamed Plan administrator (which is Summit by default)." Record Document 43 at 8. Bradley contends that UNUM's legal relationships with the plan were not as a fiduciary but as a "contractual fact gatherer and data storage and analysis subcontractor . . . [and as] a provider of goods and services in the form of

---

[3] Bradley also argues that UNUM's alleged failure to provide Bradley with a copy of the Summary Plan Description ("SPD") in violation of 29 CFR § 2520.14b-2, results in the invalidation of any <u>Bruch</u> authority granted to UNUM and requires <u>de novo</u> review. However, because the court has already held that UNUM was not vested with <u>Bruch</u> authority, this argument is moot.

an insurance product sold to a welfare benefit plan. . ." Record Document 43 at 9. Bradley, however, failed to cite any support for this contention.

It is clear to the court from its review of the administrative record that UNUM, while admittedly not the plan administrator, did maintain a fiduciary relationship with the plan as the "Claims Administrator." UNUM had the authority to review and investigate all claims under the LTD plan as well as to grant or deny those claims as it saw fit. Pursuant to the policy, all proof of disability as well as each claim itself were to be sent to UNUM for determination. UNUM had the power to question the claimant or have him examined by a physician, and UNUM was responsible for payment of benefits. See Record Document 39 at UACL 00162-00173. UNUM was a fiduciary pursuant to ERISA because it had the authority to distribute assets from the benefits plan. See 29 U.S.C. § 1002(21)(A); Pierre, 932 F.2d at 1555. It is thus evident to the court that UNUM, despite the fact that the plan granted it no express authority, was a plan fiduciary whose decision to deny benefits is accorded abuse of discretion review, provided that UNUM's decision was a factual determination and not an interpretation of the plan terms.

Finally, Bradley argues that UNUM's decision to terminate her benefits was more than a factual determination because it involved the interpretation of the term " disabled" or "disability", and therefore is not entitled to abuse of discretion

11

review. The plan at issue defines "disability" or "disabled" to mean that:

because of injury or sickness:

> 1. the insured cannot perform each of the material duties of his regular occupation; and
>
> 2. after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted, taking into consideration training, education or experience, as well as prior earnings.

Record Document 39 at 00175. In applying this definition, UNUM interpreted this definition of disabled to require Bradley to be unable to perform each and every one of the material duties of her position in order to qualify as disabled. Bradley contends that the definition only requires her to be unable to perform any one of the material duties of her position as radiology administrator in order to qualify as disabled. Because Bradley has called into question the proper interpretation of this definition, the court will err on the side of caution and review UNUM's benefits determination de novo.[4] See Duhon v. Texaco, Inc., 15 F.3d 1302, 1305 (5th Cir.

_____

[4] The court does not believe that any plaintiff has the power to invoke de novo review by simply making a general allegation of improper interpretation of plan terms. However, in this case, Bradley has supported her contention by citing the Lain case, in which the Fifth Circuit Court of Appeals held that a similar definition of disabled was improperly interpreted by UNUM to mean that the plaintiff must be unable to perform each and every material duty of her occupation. See Lain v. UNUM Life Ins. Co. of

1994). However, those factual determinations made by UNUM pursuant to that review will be reviewed for abuse of discretion. See Meditrust Fin. Servs. Corp. v. The Sterling Chem., Inc., 168 F.3d 211, 213 (5th Cir. 1999).[5]

## 2. Application Of The Standard Of Review.

Under the de novo standard of review, this court must interpret the plan language and apply it "in an ordinary and popular sense as would a person of average intelligence and experience, such that the language is given its generally accepted meaning." Wegner v. Standard Ins. Co., 129 F.3d 814, 818 (5th Cir. 1997).

---

Am., 279 F.3d 337 (5th Cir. 2002).

[5] Bradley contends that this standard of review "must be leavened with a heavy dose of judicial skepticism" because UNUM is the "gate keeper of its own money [and] operates under a conflict of interest." Record Document 43 at 11. Bradley is partially correct in her assertion. It is well settled that a "sliding scale" is applied to the abuse of discretion standard when a conflict of interest exists. See Lain, 279 F.3d at 343, Vega v. Nat'l Life Ins. Servs., Inc., 188 F.3d 287, 297 (5th Cir. 1999) (stating that the greater the evidence of conflict on the part of the administrator, the less deferential [the court's] abuse of discretion standard will be); see also Gooden v. Provident Life & Accident Ins. Co., 250 F.3d 329 (5th Cir. 2001). However, Bradley is incorrect in her contention that the court must apply a "healthy dose" of skepticism. The courts have held that when a minimal basis for a conflict is established the court reviews the decision "with only a modicum less deference" than it otherwise would. Lain, 279 F.3d at 343. In this case, the only evidence of potential conflict presented to the court is the fact that UNUM, as the party responsible for the payment of any disability benefits, had a financial stake in the benefits determination. Such a conflict is indeed minor, thus requiring only a modicum less deference than that normally afforded.

### a. Legally Correct Interpretation Of The Plan Terms.

Relevant to this case is the definition of "disabled." The policy states that:

> "Disability" and "disabled" mean that because of injury
> or sickness:
>
> 1.  the insured cannot perform each of the material duties of
>     his regular occupation; and
>
> 2.  after benefits have been paid for 24 months,
>     the insured cannot perform each of the
>     material duties of any gainful occupation for
>     which he is reasonably fitted, taking into
>     consideration training, education or
>     experience, as well as prior earnings.

Record Document 39 at 00175.

Bradley's claim centers on her contention that the defendants improperly interpreted the term "disabled" and arbitrarily and capriciously determined that she was not disabled after February 7, 2000, and refused to reverse that decision after medical evidence of that disability was submitted by her. The defendants argue that UNUM's decision was proper because Bradley did not meet either of the definitions of "disabled" set forth in the policy.

UNUM, in applying the policy definition of disabled, determined that Bradley was ineligible for benefits unless she was unable to perform each and every one of the material duties of her position as Director of Radiology. Bradley argues that this

interpretation was incorrect and cites <u>Lain</u> in support of her contention. <u>See Lain,</u> 279 F.3d at 343. The <u>Lain</u> court held that the defendant, which in that case was also UNUM, improperly interpreted the phrase "each of the material duties of [her] regular occupation" to require the claimant to be unable to perform all of her job tasks, as opposed to a less restrictive interpretation requiring only the inability to perform any one of those tasks. <u>Id.</u> In keeping with the Fifth Circuit's ruling in <u>Lain</u>, this court will interpret the term "disabled" to require Bradley to demonstrate that she was unable to perform any one of the material duties of her regular occupation.

### b.     Analysis Of The Merits Of Bradley's Claim For Benefits.

Applying the legally correct definition of disabled, the court must now determine the propriety of UNUM's denial of benefits, while affording UNUM's underlying factual decisions some deference. It is apparent to the court that there is sufficient evidence in the administrative record to support a denial of benefits, even using the legally correct, and more easily satisfied definition of disabled.

UNUM reviewed Bradley's claim for benefits not one, but three separate times. Each time, it found that there was insufficient evidence to support a payment of benefits beyond February 7, 2000. Two separate physicians, Dr. Horne and Dr. McSharry, determined that Bradley was capable of returning to her position as the

15

Director of Radiology with only minor limitations and accommodations. The reviewing doctors did, for example, recommend that Bradley be provided with a special chair with arm supports and that she also be provided with some sort of voice-activated computer or dictaphone to reduce the amount of time spent typing. At no time was it ever determined that Bradley was completely unable to perform any of the essential functions of her job.

Bradley contends that the benefits determination should have been based upon her ability to perform the essential functions of her job as listed in the job description provided by Summit, rather than the general job description from the DOT. However, the existence of a disability is determined with regard to the claimant's ability to perform the job as it is performed in the national economy, not specifically as it is performed for that particular employer. See Ehrensaft v. Dimension Works Inc. Long Term Disability Plan, 120 F.Supp.2d 1253, 1259 (D.Nev. 2000). In order for a general job description from the DOT, such as the one used in this instance, to be applicable, it "must involve comparable duties but not necessarily every duty." Gallagher v. Reliance Standard Life Ins. Co., 305 F.3d 264, 272 (4th Cir. 2002). The job description submitted by Summit states that Bradley, as the Director of Radiology, was responsible for the following major duties or responsibilities:

1. Coordinates and directs all functions of the daily operations of the Diagnostic Imaging Department.

2. Administrates and/or establishes departmental policies and procedures.

3. Addresses patient and medical staff complaints. Follow-up on error correction and establishes corrective action to address identified problems.

4. Clearly defines authority and responsibility for all personnel.

5. Develops short and long term goals and objectives with emphasis on departmental budgets, capital acquisitions and replacements, and updates marketing and operational plan for services and programs based on observed trends, existing services and new services.

6. Develops and coordinates a comprehensive quality control and assurance program.

7. Attends and/or directs regularly scheduled departmental meetings (i.e., staff, inservice, and training).

8. Collects, generates, analyzes, and distributes statistical reports as required.

9. Attends meetings and seminars external to the department and hospital in order to maintain professional acumen.

10. Knowledge of correct anatomic positioning and skills and proper equipment function.

11. Develops a written plan for replacement of all key personnel, approves hiring of personnel, and encourages growth of subordinates.

12. Plans, recommends, and approves architectural site drawings for remodeling and new construction.

13. Coordinates, directs, plans, and controls staffing requirements for equipment and personnel to meet current and future demands.

14. Performs and/or coordinates cost analysis for establishing new charges as necessary.

15. Directs or coordinates the maintaining of departmental supply inventories.

16. Coordinates, organizes, plans, and directs activities relating to patients and procedures for each area. Manages departmental operations as a daily assignment.

17. Directs and/or prepares and presents inservice education programs for new equipment, procedures, and policies.

18. Directs and coordinates the development and revisions to the policy and procedure manuals for radiation safety, departmental safety, and fire and disaster. Also, in the orientation and inservicing of each.

19. Acts as a liaison between the administration, medical staff, and contractual organizational services.

20. Participates on hospital/department committee as required.

21. Addresses patients, visitors, and co-workers in a pleasant and respectful manner; displays courtesy at all times.

22. Communicates in a professional manner at all times with the patients, visitors, and staff members.

23. Works at establishing a good rapport and professional working relationship with all departmental personnel; maintains appropriate interdepartmental communications.

24. Offers assistance and provides directions to visitors, patients, physicians, and family members in a concise, informative manner keeping a positive and courteous tone.

25. Courteously answers the telephone identifying self; correctly receiving telephone information, delivers messages and/or refers phone calls to the appropriate people, and forwards all information as required.

26. Demonstrates the ability to relate well to all levels of staff; displays enjoyment when interacting with people.

27. Demonstrates an ability to effectively express self in all areas of communication (verbal, written, non-verbal); utilizes effective listening and questioning techniques.

28. Consistently promotes supportive staff to develop a therapeutic relationship with patients and maintains a proper perspective between personal and professional affairs.

29. Consistently supervises staff members in a firm and fair manner; provides direction as necessary; leads by professional example.

30. Respects the rights, property, and privacy of others; encourages the staff to refrain from gossip and to demonstrate respect for co-workers.

31. Maintain an excellent rapport with subordinates; gains cooperation of staff while working toward institutional and departmental goals.

32. Exhibits the ability to motivate others in educational pursuits and higher levels of work performance.

33. Consistently demonstrates the ability to work effectively with a variety of staff members regardless of varied racial, ethnic, and sociological backgrounds.
35. [sic] assume other job responsibilities as requested and required.
36. Recommends and schedules off-site sources for radiologic services not provided by this facility.
37. Competent to provide services for pediatric patients age 2 months through geriatric patients greater than 65 years of age.

Record Document 39 at UACL 00040-00038. Summit's job description also listed the following physical demands of her position:"prolonged sitting (over 2 hours); intermittent standing (4-6 hours); intermittent walking (4-6 hours); squatting, bending, kneeling, twisting, and reaching; one handed and two handed duties; lifting 50 pounds; carry[ing] 35-50 pounds; [and] push[ing]/pull[ing] 35-50 pounds." Id. at UACL 00040.

The job description for Radiology Administrator contained in the DOT merely states:

Plans, directs, and coordinates administrative activities or radiology department of hospital medical center:

Tasks:
1. Conducts studies and implements changes to improve internal operations of department.
2. Advises staff and supervisors on administrative changes.
3. Assists hospital officials in preparation of department budget.
4. Conducts specified classes and provides training material to assist in student training programs.
5. Directs and coordinates personnel activities of department.

19

6. Recommends cost saving methods and hospital supply changes to effect economy of department operations.
7. Interprets, prepares, and distributes statistical data regarding department operations.

Record Document 39 at UACL 00044. While the DOT description is not nearly so lengthy as that submitted by Summit, it covers essentially the same duties, including the supervision and training of staff, administration, coordination of personnel and equipment, and cost analysis. These duties are sufficiently comparable to those listed by Summit to justify the use of the DOT description during the claims review process. The use of the DOT description was, and still is, appropriate.

The medical complaints listed by Bradley including her "limitation to repetitious motion of left shoulder, arm, (and) limitation to lifting weight (with) left arm/hand," in no way render her unable to perform any of the seven essential job functions provided in the DOT.[6] While Dr. Pickard did issue restrictions that limited Bradley from performing repetitive motions with her left shoulder and arm and from lifting any heavy weight with her left arm, these did not prevent her from performing the essential functions of her job either. The physical demands of her position as listed in the DOT include the occasional lifting of up to ten pounds as

---

[6] Even if the court applied the job description submitted by Summit, Bradley would still not qualify as disabled because there is no evidence in the record to show that she is unable to perform any one of the thirty-seven tasks on that exhaustive list.

well as occasionally reaching, handling, and fingering. See Record Document 39 at UACL 00046. Her inability to perform these occasional tasks does not result in disability because these were not the essential functions of her position. While the policy at issue does not provide a definition of "essential function," the courts have generally held them to include "the fundamental duties to be performed in the function in question, but not functions that are merely marginal." Shannon v. New York Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003). Occasional lifting, reaching, and handling do not qualify as "essential functions" under this definition.

In sum, there is more than adequate support contained in the administrative record to support a denial of benefits in this case. While UNUM did apply the legally incorrect interpretation of the term disabled during the course of its benefits determination, its ultimate conclusion was correct. Accordingly, Bradley's motion for partial summary judgment is **DENIED** and UNUM's motion for summary judgment is **GRANTED** in so much as it requests the dismissal of all of Bradley's claims with prejudice.

## C.   Bradley's Claims Against Summit.

In addition to UNUM, Bradley names Summit, her employer, as a defendant in this case and seeks the recovery of benefits from it as well. However, there is no

legal basis for a recovery from Summit. At the very least, in order to recover benefits from her employer, Bradley must show that Summit had sufficient discretionary authority over the plan. See Roig v. Ltd. Long Term Disability Program, 2000 WL 1146522 at *9 (E.D.La. 2000).[7] Summit has no such authority. There is no evidence that Summit played any role in the administration of the plan or the claims. All information was submitted to UNUM for evaluation and all determinations under the plan were made by UNUM. There is no legal basis for Bradley's claims against Summit. Accordingly, Summit's motion for summary judgment against Bradley must be **GRANTED** and Bradley's motion for partial summary judgment must be **DENIED** insomuch as it asserts claims against Summit.

### D. Summit's Claims Against UNUM.

Summit filed a cross-claim against UNUM seeking indemnification on the grounds that UNUM was solely responsible for the termination of Bradley's

---

[7] The law in this area is a bit unsettled. The circuits are split over whether any entity other than the plan itself is a proper defendant in a suit to recover benefits under ERISA. See Roig, 2000 WL 1146522. The Fifth Circuit Court of Appeals has yet to decide the issue, however, numerous district courts in the Fifth Circuit have come down on the side of the Ninth Circuit and held that the plan is the only proper party. See id.; Murphy v. Wal-Mart Assocs.' Group Health Plan, 928 F.Supp. 700 (E.D. Tex. 1996); Crawford v. Exxon Corp., 851 F.Supp. 242 (M.D. La. 1994); Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1324-25 (9th Cir. 1985). At the very least, as is required in other circuits, an employer must have sufficient discretionary authority over the plan to qualify as a plan fiduciary and be a proper defendant. See Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (3rd Cir. 1994).

disability benefits. UNUM has conceded that it was solely responsible for the termination and that as such, if the court were to find in favor of Bradley, UNUM would be the party responsible for payment of any LTD benefits, as well as costs or attorney's fees. See Record Document 53 at 2; Record Document 41 at 2.[8] However, because the court has now dismissed all of Bradley's claims against the defendants, Summit's motion for summary judgment is rendered **MOOT**.

## III. CONCLUSION

For the reasons stated above, UNUM's motion for summary judgment against Bradley (Record Document 31) is **GRANTED**; Bradley's motion for partial summary judgment against UNUM and Summit (Record Document 39) is **DENIED**; Summit's motion for summary judgment against Bradley (Record Document 35) is **GRANTED**; UNUM's motion for summary judgment against Summit (Record Document 33) is **DENIED**; and Summit's motion for summary judgment against UNUM (Record Document 37) is **MOOT**.

A judgment consistent with the terms of this Memorandum Ruling shall issue

---

[8] While UNUM does admit it is solely responsible for the payment of any LTD benefits this court might find are owed to Bradley, it contends that it is not responsible for the payment of any penalties. However, Bradley's complaint does not assert that she is owed any penalties under ERISA, and her other claims have since been dismissed. As such, UNUM's argument is moot.

herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this 12ᵗʰ day of

September, 2005.

JUDGE TOM STAGG